Your Honor, the second case in the morning, call 211.90. Wajnberg v. Erie Insurance Co. on behalf of the Attila Ross, Mr. James Newman. On behalf of the Attila Lee, Mr. Ed Lee Metz. On behalf of the Attila Lee, John Berg, Mr. Pat Flynn. Are you gentlemen ready to proceed? Yes. Counselors, you will notice the seat here is vacant. Justice Zinoff is part of this panel and she will participate in the ultimate resolution, but she had a family emergency this morning and was unable to be in court. So if you are ready to proceed, you may. May it please the Court. My name is Jim Newman. I'm counsel for Erie Insurance Company. This is a rather unique case in that the plaintiff is demanding that a third party, Erie Insurance Company, assert a lien which it does not wish to assert, which it does not believe it has. Also, what makes this case unique is that the two parties in this case, which are the parties of interest that are fighting, if you will, are the two insurance companies, Erie Insurance Company and Farmers Insurance Company. Yet neither one is a party in this action. And that's one of the jurisdictional issues here. The issue here, first of all, is whether or not Erie has asserted a lien. As this Court is well aware, Illinois has codified liens by statute. There are attorney's liens, medical liens, and such. There is no lien statute for automobile insurance companies. It doesn't exist. And that's important because if, in the event, if we look at this from a different perspective, let's say the money was paid by the farmers to the defense, in this case, of the plaintiff's launch card, and didn't notify Gary. Not the lien is a claim. No, I do not believe the lien is a claim. It is not a claim. It is a claim. Well, it is a claim. It is a type of claim. It's a right to certain property. The courts have defined it, you know, depending upon, but it's either by statute or contractual. There has to be some type of an agreement. Otherwise, you don't have a lien. And in this case, we've never asserted a lien. We don't have a statutory lien. But my point is, if they did not notify Erie, and in some of this case, what rights would Erie Insurance Company have? Well, what do you call your contractual claim for reimbursement of medical pay under your insurance policy, medical pay from your insurance? As the court has said, it's an independence claim. It's a subrogation claim. It's contractual. And it's different from a lien. If you look at what a lien is, if a doctor provides medical services to a patient, and that patient has a right against a tortfeasor, the doctor doesn't have any independent rights to go after the tortfeasor. That's what makes it a lien. He has a right to recover that money potentially, but he doesn't have an independent right to go after the tortfeasor. That's markedly different from this case, where we have an independent right to go after the tortfeasor and pursue it to contract. As soon as Erie Insurance Company paid a dollar, the right to go after that is transferred under the insurance contract to Erie Insurance Company. They can pursue it. They can choose not to pursue it. But they have a subrogation right. And that's what this case is about. And there's an arbitration agreement. And as this court is well aware, the arbitration agreements are strong public policy to enforce arbitration agreements. And, in fact, I cite case law that says that an arbitration agreement actually divests the circuit court of jurisdiction because that's where they chose to go. And that's what we have here. We have an arbitration agreement. You have a, from a time frame standpoint, if the court looks at how this case came about, the Erie Insurance Company, this accident occurred on October 3rd, 2007. Erie paid its last bill in April of 2009. They made a demand on that very same day to Farmer's Insurance Company. Then they filed intercompany arbitration in June of 2009, four months before a lawsuit was filed, a personal injury lawsuit was filed. So they filed first. And the evidence in this case, demonstrated by the affidavit, is that once that arbitration is filed, in this case by Erie Insurance Company, that's all they had to do. They put their proofs together. They put their statement of facts together. They submitted to arbitration. In essence, the case was before the jury. The jury was out. The only thing that they recovered, the only thing that Erie was waiting for was a verdict from intercompany arbitration. They had done everything that they could possibly do to get their money, to prosecute their claim. Four months later. At a point in time, all you had to do was sit in a meeting in the lawsuit. And that's another point. The parties in it, Erie Insurance Company and the plaintiff, actually everybody, although the defendant, Longford, didn't address this, didn't present any evidence to contradict the statements from Erie and the plaintiff. They didn't know each other. Didn't Erie Insurance Company participate in continuing the arbitration for a year? No. They did not. They actually objected to it. And actually, the letter, there is a, in the appendix, you will see a letter from the insurance company where Farmer's Insurance Company intended to move it. Erie objected to it. And in the letter, which is 873 of the appendix, Erie says, we don't know why they're moving it. Perhaps there's an underlying lawsuit, but we weren't provided notice. The intercompany arbitration has these rather strange rules. And notice is one of them. When a motion is filed, you don't have to give a copy of the motion to the other side. And in this case, Erie Insurance Company had no idea. And they wrote a letter saying, we don't know why they're doing it, but we want the arbitration to go forward. And the intercompany arbitration almost rubber-stamped everything. Somebody asks for a continuance, and they got a continuance. It wasn't until they got served with a motion to adjudicate a quote-unquote lien six days before the motion was up that Erie was aware that there was a lawsuit pending and knew who was involved in it. Farmers is the only party in this case. They're not even a party. Farmers is the only entity that knew of everyone. The plaintiffs didn't know of us, and we didn't know what Farmers did. Farmers did nothing. And that's one of the issues here with the Common Crime Doctrine and equity that we're saying, is that we've taken a position, and we've still taken a position from day one, and we still have it today. We don't have any lien interest in Farmers' settlement with the plaintiff. But likewise, that settlement in and of itself has no effect on our independent claim for intercompany arbitration. So what we're asking this court to do is we're joining the plaintiff in part and force the settlement. Farmers, on behalf of the defendant, offered $40,000. That's great. They settled their case. Our case is independent. And the fact that it's independent is also evident by the release itself, which is page 855 of the appendix. In the release that was entered between the two parties, it specifically says, and this is on page 855, this release shall not destroy or otherwise affect the rights of persons on whose behalf this payment is made or persons who may claim to be damaged by reason of the accident, other than the undersigned, to pursue any legal remedy they may have against the undersigned or any other person. It specifically excludes Erie's claim. And the case law dealing with arbitration says that if they were intending to include it, they have to be specific in their release and say this includes any claim that Erie would have for arbitration. They did not do that. In fact, they did just the opposite. What's your argument on notice, that they had notice of the arbitration agreement between the insurance company and the insurer? That who had notice? Erie. We have to – maybe I'm not understanding. Well, the two insurance companies are Erie and Farmers. And Farmers is the one that filed the arbitration, is that right? No, Erie did. Erie, okay. Erie filed – Erie was paid $10,000 in medical claims, and the day that they paid their last claim, they sent a letter demanding payment. They didn't get payment from Farmers. Four months later, they filed an accompanying arbitration, which is required because they're both parties to the accompany arbitration. When did they file the request for arbitration? It wasn't four months after that. No, it wasn't four months. They paid their last claim on April 8th. They filed an accompanying arbitration on June 5th. Four months later, plaintiff filed a lawsuit. And the plaintiff and the insurance company didn't know of each other. That's evident by the letter. So there was no – the argument has been made, oh, they didn't send a ten-year letter. Well, they didn't send a ten-year letter because they didn't know of their existence. The only one who did was Farmers, and Farmers didn't let plaintiff know, and Farmers didn't let us know. Instead, we continued to pursue our intercompany arbitration, and they continued to pursue their bodily injury claim. Independent, separate causes of action. And the other issue here that is touched upon is jurisdiction. And we submit that Judge Pence in the Circuit Court of Kansas did not have subject-matter jurisdiction. He did not have personal jurisdiction. As for subject-matter jurisdiction, my very first thing I said when I stepped before this panel was, the two interested parties in this dispute are not parties. Farmers isn't a party. They've never been. And the insurance company is not a party. They were dragged in by way of a motion, which goes to personal jurisdiction. There is no mechanism for a party to, by way of motion, adjudicate these rights. You can't do it. It would have to be a separate claim, a lawsuit that was filed, and the cases that they rely upon, in each instance, a separate lawsuit, whether it's a declaratory or something along those lines, was filed. And there's a burden of proof involved. A discovery is necessary, but certainly not by way of a motion with six days' notice. And what's interesting about this is they served Erie with a motion to adjudicate their quote-unquote lien by a third under the Common Fund Doctrine. Erie did not have enough time to get their stuff together to get it to court, because they got six days' notice, and they came to my office. It got vacated. Well, it did. But interestingly, look what the lawyer said. Rather than adjudicating it down by a third, they adjudicated it to zero, which, again, is a quality on its face. Respectfully, that was vacated. Yeah, it was vacated by agreement, and that's the other issue. I filed a motion with the circuit court and stepped up and said to Judge Spence, with the plaintiff's counsel there, we don't have a lien on your claim. You get 100% of the recovery. And Judge Spence, is that right? And the plaintiff says, yes. It was an agreed order. That's the order that was entered. It was agreed, saying we have no interest in it. That was on October 25th. It was after that fact, when the plaintiff submitted the order to defense counsel, saying, well, here doesn't have an interest in this, and now you can write a check to me for $40,000, defense counsel demanded the plaintiff's counsel go and vacate that order. He filed a motion to vacate an agreed order, which, under the law, would have to be the same standard as a 214-01 petition, which he did not even attempt to meet. So from a jurisdictional standpoint, I don't believe that the court had jurisdiction. The final argument that we have is a public policy argument, and equity. As this court is well aware, the Common Fund Doctrine is an equitable principle. Equity here does not favor the Common Fund Doctrine. It does not favor farmers. The plaintiff should be able to keep whatever they settled. At the time of settlement and the proposal of settlement, according to the plaintiff, he wasn't aware of us, and obviously we weren't aware of him. Farmers offered $40,000 to the plaintiff to settle his claims. They shouldn't be bound by that offer, but it shouldn't affect us. Public policy strongly supports arbitration, so much so that while this case was pending in the appellate court, the Illinois legislature now mandated, passed a statute of law, that now mandates that all property damage subrogation claims go to arbitration. They're removing them completely from the circuit courts. Prior to this, it was only if you were members of any company arbitration. Now all claims under a certain dollar range, either $5,000 or $10,000, I don't remember which, but have to go to arbitration. So that public policy favoring arbitration is so strong. And for the circuit court to say, we're going to interfere with that and we're going to adjudicate your rights, I think that creates a chilling effect on the public policy itself and on insurance companies. Why would an insurance company agree to go through the hassle of intercompany arbitration if after it submits its proof and it's sitting there and waiting, you can have something like this where somebody comes in and tries to adjudicate it to divest some of the insurance company's money. The whole reason you have intercompany arbitration is to avoid this problem and so they don't have to pay attorney's fees because it's done informally, on paper, by adjusters. That's the reason why they're part of intercompany arbitration. They don't want to have to pay attorney's fees on these type of claims. So bottom line, your position is that the plaintiff here should get all of the $40,000, but that pharma should pay you an additional $10,000. Actually, my position is... This can be prevailed at arbitration. Exactly. I'm asking for my arbitration fees to go forward. Currently right now, it's pending. It's set for a hearing on, I think, June 14th, I think, of this year. It was set for June 8th of 2011. They moved it once again because of this appeal. It's now set for June of 2012. We'd like that case to go forward. If we lose, we get nothing. If we win, we get what we recover. That's the way it should be, and that's what we're asking this court to do. Thank you. Counsel, do you wish to proceed? May it please the court. Pat Flanagan on behalf of the plaintiff in the underlying case, Al Weinberg, the appellee in this matter. Your Honor, your justices, this matter involves more than what the attorney for Gary Insurance Company puts forth. This matter involves an issue of whether plaintiffs and defendants that know that a medical payment has been made by an insurance company and that the insurance company has sent a letter to one of the parties, regardless of whether it was the plaintiff or defendant, asking that that interest be protected, then should they negotiate that medical payment as part of the settlement? Would you, first of all, touch-tie up the argument of the affilade regarding is there a lien or is there not a lien, and what's the significance of whether it's a lien or not a lien? In the case, Your Honor. The plaintiff filed a motion to adjudicate both liens, unquote, or claims, against the $40,000. What's your importance of that argument here? In this case, there really is no importance to Aries' argument today, because Aries Insurance Company sent a letter to Farmers Insurance Company saying, protect our interest upon settlement. What they're telling is, we want you to include us in any settlement negotiation. The case law in Penny, Berner, all the case law that deals with this, we have similar letters that are being sent where the court says, your letter to not be represented by the plaintiff's counsel in settlement is not unequivocal because you asked for your interest to be protected or your medical payment to be paid out of the settlement. You're arguing a common law claim. He's arguing this case shouldn't even be in court because they do not have a lien on the money. Their letter seeking to have their interest protected is in itself forcing a lien on this case. And if the plaintiffs and defendants neglect that letter that they sent, then under the holding and control group, the plaintiff or the defendant could wind up having to pay that segregation lien. The holding and control group, where they sent a letter saying, protect our interest, the plaintiff settles the case and doesn't include it, winds up paying out of the settlement proceeds. So in our case, in the incident case, if I ignore that lien as a plaintiff's attorney and do not include the EIC's $10,000 in my settlement, they can then come against under the holding and control group, which they set, and take that $10,000 out of the $30,000 settlement because I didn't include that in the $40,000. Echelon says there is no lien for that. Echelon says the word means legal implication for the word. And you're taking the position that there isn't. A lien is an interest. An interest is a lien. When they sent that letter, they asserted themselves into this case, saying they wanted part of those settlement funds, which now subjects it to the common fund doctrine. And the court has subject matter jurisdiction over settlement funds, and they have personal jurisdiction over Erie Insurance Company because Erie interjected themselves in this case when they sent that letter. And furthermore, when they filed their arbitration claim, intercompany arbitration, their claim says, we are filing this claim to preserve the statute of limitations because there was only four months left before the plaintiffs could no longer file a claim under the statute of limitations. The fact that they filed that saying, well, we're here to protect our statute of limitations because we're trying to protect our interest. Their letter to their Congress is saying, we want our interest protected. They have interjected themselves and are claiming a lien on the process. The petition or a motion to adjudicate a lien filed pursuant to a medical payment by an insurance company falls under the common fund doctrine by all the cases. Whether you rule that they failed to send the attending letter or you rule that they did send the attending letter but didn't participate or that they sent a timely attending letter, all of those cases say that that insurance medical payment is part of the common fund doctrine and the court has subject matter and personal jurisdiction. And to address the issue of the adjudication of the lien, the initial motion asking the lien be adjudicated to zero and the alternative that it be adjudicated by one-third, and that's on page 34 and 35 of the record. And I know that that order was subsequently vacated. And the argument that plaintiff and defendant only filed the motion that vacated the October 25th order was because the defendant wanted them to. That's totally erroneous. I was on vacation when the emergency motion was filed. Another attorney appeared. They argued the case. The order that vacated the October 12th order specifically states, after hearing evidence of a parties, it doesn't say after receiving an agreement by the parties or a recordation of an agreement by the parties or receiving an agreed order that stated it was an agreed order. It said after hearing evidence of the parties. You don't hear evidence when you have an agreed order. It's a recordation of a contractual agreement by the parties, which did exist. And in this case, furthermore, the defendant was not a party to that also. When I came back from vacation and I talked to my partner, I said you missed the key points of this case, and I filed a motion to vacate that October 25th order. The court then heard arguments again after the briefs were filed in February and then vacated that second order and ruled that the court had jurisdiction and reduced the lien by a third. If plaintiffs and defendants don't do anything about a medical payment interest or lien that they know about, under the case cited by the insurance company, your insurance company, Home Insurance versus Ours, the defendant will wind up having to pay because he failed to notify anybody. But in this case, the defendant and the common practice in our district between plaintiffs and defendants, and I do both sides, is that when we are talking negotiation, not settlement, we both ask each other, are you aware of any liens in this case? And the reason we do that is to protect ourselves from situations just like this so that we discuss those and include them in any settlement proceeds. In this case, that's exactly what we did. The defendant said, hey, I've got a letter from your insurance company saying protect their interest, and we did protect their interest. We had agreed on an amount that would make Mr. Weinberg whole and added the $10,000 on to that, which was the medical payment provision that AREA sought to have protected, both in their letter and when they filed our attestation agreement, we're only filing this to protect the statute of limitations. So your position is you had a settlement agreement for $30,000 and then you discussed a lien and made it $40,000. We knew of AREA Insurance Company before we even reached the $30,000. We knew AREA Insurance Company had a $10,000 medical payment. We knew that before the two of us ever reached it. The settlement negotiations went on for about seven to eight weeks with letters and calls back and forth almost on an every-other-day basis. A lot of time was spent in the settlement negotiation. I spent a lot of time talking to my clients about what would make him whole, and we finally came to the point of bartering back and forth that $30,000 would make my client whole. And we then included, based upon the case law that's out there, we knew we had to take care of this or it would have come out of this $30,000. We included the $10,000 for AREA Insurance Company. We then called AREA Insurance Company and asked them to reduce their lien by one-third without having to do a motion. AREA Insurance Company said, well, reduce it by 15%. Again, they're saying, we want to take part in the proceeds, but we don't want to give you, the attorney, your full share of it. We only want 50%. A third, unequivocal statement by AREA Insurance Company. They were never unequivocal in saying, we do not want you to represent us. We do not want to participate in your settlement. Three times between the letter to Farmers, the filing saying we're filing to protect the statute of limitations, and then my telephone discussion with Melissa Bones, the AREA Insurance Company representative, who said, no, we'll reduce it by 15%. We want our funds from there, but we don't want to give you a third. And I said, I'm not taking 15%. The county fund document says, if I protected your interest and you did nothing to stop me from doing it, I'm entitled to a third. AREA Insurance Company did know of the underlying suit when Farmers filed their motion to extend the arbitration date because of the underlying suit. Farmers' personal set of letters – Hold on just a second. Counsel disputes that. I know he does, Your Honor. So did AREA get a copy of Farmers' motion to continue or not? AREA got a letter from Farmers telling them it was continued because of the underlying suit and a copy of their motion. Farmers sent that, and I believe Mr. Weidman will address that during his portion of the argument, and that was also part of the record. The letter was not in the record, but in the briefs that were before the court, we mentioned that Farmers did send notice to AREA Insurance Company. The letter's not in the record? I don't believe that letter is in the record, Your Honor. Okay. I don't recall seeing it in the record. That puts us in a difficult position. If it's not in the record, it doesn't exist. I just believe it's in the briefs, Your Honor, but Mr. Weidman can better address that than I can. But Farmers did send AREA a letter stating that. And so all AREA had to do was to go into King County and look that up. And even if AREA never received a notice of an underlying lawsuit, even if we take what Justice Jorgenson just proposed to me, that no letter ever existed, AREA still had a responsibility to send a pending letter to their insurer saying if you do file a suit, do not include us in any settlement negotiations or claim in your underlying suit or filing in your company arbitration. They could have notified the insurance insurer that they had his address, they had his phone number, but they didn't do that. You got a claim, your claim. That's correct, Your Honor. They could have notified Mr. Weinberg, and they knew about him. They never notified Mr. Weinberg. Thank you. Counsel, I've got a couple of questions. What's the purpose of the intercompany arbitration? How does that juxtapose with what goes on in the civil suit, plaintiff versus defendant? And we have this almost corollary or parallel dispute, I'll call it, between Farmers and AREA. What impact does one have on the other? Intercompany arbitration prevents one insurance company from filing a subrogation civil lawsuit in the circuit court against another party. For instance, if AREA was going to file in the civil court and they were not mounted by the intercompany arbitration, AREA would have filed a separate lawsuit as subrogee of Al Weinberg against Ms. Woolworth to recover anything they may have paid for property damage or for medical payment. By the intercompany arbitration, they agree with other members of the intercompany arbitration, and they will settle their disputes in arbitration. However, the case law says that when we have a plaintiff who is an insurer that files suit, he can negotiate that medical payment as part of his claim. And if he doesn't, under Troll Group, the insurance company can go after him or stay in intercompany arbitration to recover their fees. Troll Group is a very important case here, because it puts a burden on the plaintiff to include them in that settlement, because Troll Group forced the plaintiff to pay the medical payment of his settlement receipts when the plaintiff in Troll Group said, I don't believe they've made any payments, and if they have, I think they've recovered them in their own case. Okay, so the difference here would be if ERIE had sent an attorney to represent itself to sort of budge into your settlement agreement and had said, hey, I want my $10,000,000, and the settlement went from $30,000 to $40,000, then ERIE walks away with its $10,000 out of that $40,000. Is that correct? That's absolutely correct, and the case law holds that. I believe the case is Ritter House v. Hockmeister. Let me take a quick look here. Ritter v. Hockmeister, that's exactly what happened. The insurance company intervened. Now, when the insurance company intervened, the plaintiff sought to limit the role of the insurance company because they thought it would prejudice their case. The plaintiff then asked for the insurance company's willing to be reduced by a third, and the court held, no, we're not going to reduce it by a third, because you restricted their participation in the fund. They attempted to represent their own. They told you they wanted to represent their own interest. You didn't allow them to do that. We're not going to apply the common fund doctrine. It's not applicable here. So what ERIE Insurance Company is asking is to just throw the upheaval, the case law that deals with medical payment provisions and the common fund doctrine, and they're asking plaintiffs and defendants to file declaratory actions to determine whether they're going to need to include that medical payment that they're aware of in any settlement negotiations. But you're saying that ERIE would have had to file a separate suit? No, no. What I'm saying, Your Honor, is that what ERIE is asking this court to do is hold they're not subject to the common fund doctrine when we knew of their existence and had to let her sign to protect our interest. What ERIE is asking this court to do is force plaintiffs and defendants, when they're going to enter into a settlement negotiation, to file declaratory actions to determine whether or not their settlement must include that medical payment, and it's going to increase litigation, increase costs, and have a chilling effect at any settlement negotiations between any plaintiff and any defendant. Do you have an obligation to notify ERIE of the suit? No, I don't, Your Honor. There's nowhere in the case law that says I have an obligation to notify ERIE. I'm aware of that. My question to you is, if the common law doctrine is an equitable vehicle, in order to participate in equity, under equity, do you have an obligation to notify ERIE of the existence of the suit and the process of the suit? No, I don't, Your Honor. You think you should? I don't think I have a requirement to do so. If they don't want… No, you don't have one. Do you think you should? Do you think that's part of the equity? No, I don't. I don't, Your Honor, because I think if ERIE Insurance Company doesn't want me to include them, the case law says they have the obligation to notify the insurer or the insurance attorney not to represent them. If and when they have notice? No. It tells them, even if they don't have notice, because some of the cases, the insurance company sends notice to their insurers and they don't. No, to their insurer, but not to you. If they send it to their insurer, it's the same as sending it to me, Your Honor, who represents the insurer. Okay. The amount of money we're talking about is one-third of the $10,000. You're trying to preempt that would come out of the 10. Correct. And that's the total amount. Then, whether or not they get any of the 10 will depend on arbitration. Under Berner, under Country Regional v. Berner, when the case was settled, the arbitration agreement came back before the case that the court heard rulings of the motion to adjudicate the lien in Berner. In Berner, the court said the insurance company had an obligation to dismiss their intercompany arbitration once the settlement had been reached in the underlying case. And in Berner, we had an arbitration award before any hearing was made on the motion to adjudicate liens. So what I'm saying, Your Honor, is they had a duty to dismiss their arbitration once we reached settlement. For Berner, there was an arbitration award. Here, we don't have an arbitration award. They had an agreement with the insured relative to our payment of $10,000 or $15,000 under the agreement to reimburse the medical payments they made to the defendant. I don't know what the status of that is. I assume we don't have an office status, so that is what happens between the insured's farmer settlement and the defendant's. No, I think my position is that the intercompany arbitration should be dismissed. And you're asking for that in… I did not ask for that in my prayer, but that is what the Country Mutual v. Berner case specifically stated. They had a duty to dismiss their arbitration claim. And if they don't, they can then file a Farmers' In. ERIE will fight over whether or not it should have been dismissed. That is not part of this case, Your Honor. So when ERIE fails to notify its own insured, don't settle without us, it loses any rights it would have to stay out of the common fund, and it loses its right to pursue any arbitration with farmers. What's your position? My position is that if ERIE doesn't notify their insured not to represent us in any settlement, then they are included in any settlement negotiations that the plaintiff insured enters into under Tenning and are not entitled to an arbitration award. Okay. And as Country Mutual v. Berner. But they are entitled to the balance of their medical pay. The $10,000 that you created for anticipation of their quote. They're entitled to the $10,000 minus my attorney's fees. And I think ERIE, this is over a $3,000 attorney fee. It's a much bigger issue than that. It's an issue of settling cases. It's an issue of whether we're going to have to include that. And I'm going to have to pull out of my pocket as an attorney to my client that medical pay insurance provision that I failed to include because I didn't think I needed to. It's a much bigger issue than an attorney's fee. It goes to settlement of cases. Is the law just unclear? I think the law is very clear, Your Honor. I think the law places a duty on the insurance company to notify them. It places a duty on the plaintiff to include them if they're not notified. It places a duty on the defendant to notify all parties if they have notice of it. I don't think the law is unclear at all. I think it's very clear. Any final remarks? That's it, Your Honor. Thank you. Counsel? Yes. Good morning. May it please the Court? My name is Edward Mead. I represent Data Wembley. I'll just address the issue of whether or not this matter comes within the Common Fund Doctrine. And I think that what is clear here is that in order for $10,000 of med pay not to come within the Common Fund Doctrine or just be determined solely through arbitration, that the plaintiff must follow the requirements set forth in 10 in its program with respect to the collection of subrogation claims. The case law is clear that ERIE must promptly and unequivocally inform the parties of its subrogation claim and expressly disclaim any intention to employ the insurance attorney for the purpose of collecting that claim. In this case, ERIE never sent a letter to farmers, never sent a letter to its insurer, or never sent a letter to its insurance attorney that it intended to collect the med pay subrogation claim through arbitration only and not to allow their attorney to collect. Now, the only letter that we have from, that farmers has from ERIE is their April 13, 2009 letter that sent to farmers that just simply requests that farmers protect the interest of ERIE at time of settlement with their insurance. That's the only letter that ERIE ever sends to farmers with respect to the settlement or to protect their interest. They don't say, we're going to collect this on our own, they don't say that we're going to file intercompany arbitration, and that's the only venue in which we expect payment on the med pay payments. What happens next is that they do file med pay arbitration, and on April 14, I think it was the address, I'm sorry, on April 14, that's when ERIE instructed farmers to protect the subrogation claim. They then filed intercompany arbitration, and that was simply, if you look in the application, it says at the top, we're filing this simply to protect the statute of limitations. Nothing more. It doesn't say we're filing this because we intend that this be the sole avenues how we're going to collect our med pay benefits. This is done to protect the statute of limitations. We didn't file for arbitration. Arbitration, correct. That's what it says in your application. This is done to protect the statute of limitations. Counsel, what's the purpose of the entire arbitration structure then? Well, that's to protect the, no, it's to stay across, number one. It's to protect the insurance company if no lawsuit is filed. That's another venue as to how they can then collect any med pay benefits or subrogation claims between the two insurance companies if no lawsuit is filed. It's your position that a lawsuit will always then trump any arbitration proceedings? As soon as the lawsuit is filed, arbitration is not true. If they follow the rules, step forth and tend, then the arbitration will not. I mean, if they promptly and unequivocally notify the parties, that will not. I get the Tenney letter, but if they do that, an additional requirement is that they must actively participate in the lawsuit to protect its interest. Not a lawsuit, I don't think. I'm sorry, but actively participate in the settlement negotiations or the creation of the fund. Okay, I was calling that a lawsuit, but okay, we'll call it a settlement. But if they do that and they actively participate as the case law statute required them to do, then they would have recovered their $10,000. And I would ask you then, what would be the purpose of the arbitration? It would be resolved. I guess I'm not fine, because if they did participate and they told the parties that they did not wish to use planning counsel to collect, then they would be able to collect their entire amount. Correct. Nor do they get the other, any money, because they're saying, I don't want to be part of your settlement. Correct. I mean, that would put the parties on notice not to include that amount of money within the settlement negotiations. The problem that we have is that Erie is sitting there and just filing their claim for a surrogate or subrogation claim. In arbitration. Not letting the parties know that that amount of money cannot be included during the settlement negotiations. Had they filed a penny, we would be on notice that that money is not to be included. So if we negotiated with planning counsel, we would say, hey, this $10,000 is not to be included. And just to take issue with counsel, with intercompany arbitration, it is not the only avenue for recovery. If it was, there would be no deferment given by intercompany arbitration. They would say, we'll make a decision. This is how it's going to be paid. That's not how it is. If there is notice of a pending lawsuit, the matter is deferred. Now, I won't address how the plaintiffs did. If you do participate in the pending lawsuit and settlement, wouldn't it be natural for you to protect your net pay and make sure that the settlement included your $10,000 or whatever it may be? So the plaintiff knew how much he was getting and he knew how much you were getting. And there wouldn't be any attorney fees that came out of it because you were credited with obtaining that $10,000, not the attorney for the plaintiff. So the attorney for the plaintiff wouldn't be entitled to any fees out of the 10, and you would get the 10. I mean, it sort of makes sense to me that if you were going to participate in the settlement agreement, the purpose of the protection would be to increase the amount to get your $10,000, one way or the other. A lot would depend on the settlement insurance company, what they took, whether they were set on paying $30,000 or $40,000, which included your net net pay. In this situation, I don't have the net pay, but if they participated and did what was required under 10 and said that we are not going to use the plaintiff's attorney in any way to recover our $10,000 net pay, then we would all get a notice as to how to structure the settlement. That when I negotiate with him, that $10,000 would not be included because it would already be given to him. And that would change the dynamics of the settlement agreement. But we suspected to Erie's contention that it didn't have notice of the pending lawsuit. In the record of appeal on page 177, the farmer specifically sent a letter to Erie, to Melinda Bloom, saying, can closely find respondents' contentions for the arbitration form docket, gives the number. We acknowledge it will protect your medical payment subrogation right itself. The enclosed arbitration form contention sheet tells them the reason for deferment justification. A lawsuit was filed on 10-9-0-2, I'm sorry, 10-2-0-9, and is currently pending. So as of February 25th, or shortly thereafter, assumed for now, 2010, Erie was notified that a lawsuit was pending involving their insurer. Now, they were also notified by intercompany arbitration by letters on 4-3-20, saying that the matter has been deferred for one year due to a companion claim and or a lawsuit pending. Now, the settlement didn't take place until September. So we have March, April, May, June, July, August, September. They did not do anything, did not be set up for clearance, didn't make any effort to determine if the plaintiff was represented, who was his attorney, sent a letter to the farmer saying, we do not wish to use the services of plaintiff's attorney in recovering the med pay payments. They did not do that. The only letter that they sent was a letter to intercompany arbitration, not copied to farmers, indicating that they were objective to the contingency. When you tell Erie that you will protect their funds at settlement, what does that mean? That we're going to protect their subrogation rights, meaning that they will be named on any settlement check or any settlement draft that is issued. Does that mean you're protecting their interest in recovering $10,000? Or in putting $10,000 into a fund from which Erie will, under some concept of equity, whatever the attorney's fee or expenses, et cetera, would be? What does that mean? We are protecting their rights, their contractual rights of subrogation, and what that means is that if we follow the case law, the plaintiff's attorney will generally negotiate what the recovery will be. If we didn't receive notice... But you did. Yeah, we didn't. So what the insurance company will do is just name Erie on the check. Okay, but my question is, I know that's what you did, my question is when you send them a letter in February of 2010, give or take, February 25th, that letter, and you say we will protect your subrogation rights at settlement. Right. What does that phrase mean? That means simply that they will be named on the check, meaning we will not pay any payout without protecting your subrogation rights. And their subrogation rights was to recover $10,000. Correct. How is what you did, and I don't mean to be casting aspersions, but I'm trying to understand where we draw the lines here, how is what you did protect Erie's claim to $10,000, not a portion of that? And how does that protect Erie up to $10,000? Right. Not up to, at $10,000. Because they told you we have a claim for $10,000. Yes. And I apologize for misusing the word claim, but they're saying we have a claim for $10,000. You say, okay, in February, not to worry, we will protect your rights subrogation at $10,000. Right. Doesn't that mean that you will protect their right to recover $10,000? Or does it only mean that, look, we're going to take your $10,000 and put it into this fund, and out of that fund you will receive some money, but not necessarily the $10,000? It's more of the latter, what you said, that they're going to recover what they're entitled to under the law. And if they do what is required under the law, meaning that they'll get the $10,000, if they do not and a common fund is created, then they will only get... So when you say we'll protect your interests, that means we'll protect your interests if you also comply with the law, the attorney letter and the participation? Correct. Okay. Did you have any conversation or correspondence with the plaintiff's lawyer regarding the claim for $10,000 and the fact that you would do something relative to protecting that claim? The only conversation would be that if the area had a $10,000 Medicaid claim, they are claiming this, you need to be aware of it, contact them and negotiate and see what you can do. Okay. So based on the argument of the plaintiff's attorney, you recognize that there was a $10,000 claim and in negotiating settlement, there is claim included that $10,000. Correct. If you didn't know about the lien, perhaps it might have been a $30,000 settlement. And then at that point in time, your client might have had problems. I mean the insurer, not your client, but the plaintiff could have had some kind of problems because you and the area would go after the claimant for the $10,000. Correct. They would go after their own client. Correct. I'm sorry, their insurer. Yeah. Right. But I think address this with the plaintiff. The problem with what AREA is proposing is that it puts the plaintiffs and defendants in the lawsuit at a disadvantage, not knowing whether or not they should include these medical bills in settlement negotiations or not.  And he says, don't, we are not using plaintiffs' attorney. These medical bills are going to be recovered outside of your lawsuit or settlement. So we would know that, okay. This is not to be included. If you're an experienced PI lawyer, you're going to ask your client whether or not he received any additional payments. If you're a non-experienced PI attorney, you couldn't make a settlement without knowing that there were potential claims against that settlement or not. But I'll just add that AREA sat on its hands in this case. If they wanted to go solely through intercompany arbitration, they should have written to us, farms, their insurer, when they knew that this lawsuit was filed, which they did, even though they claimed they didn't, because the record's clear. They received letters from farms and letters from intercompany arbitration advising them that a companion claim for a lawsuit had been filed well before this case was settled. And therefore, the common fund doctrine applies. And ultimately, the intercompany arbitration case will be dismissed. Is there anything in the arbitration agreement, the intercompany arbitration fund, or anyway, the agreement that you all are members of, that requires a lawsuit to proceed first or dictates that arbitration is deferred if a suit is filed? Is that an option? That is what typically happens. If any time there is a lawsuit pending, the matter is deferred until that is disposed of. And that's for the reason. Is that just custom? Yes. I'd like to address your last question about intercompany arbitration and deferment. And there's a big difference here between deferment and dismissal. And counsel is correct to some degree. The arbitration form will defer an arbitration. They don't dismiss it. They defer it. And they do it because normally, in intercompany arbitration, there is no discovery process. Litigation, there is. So if litigation is filed, it gets deferred usually by somebody moving to defer it, saying, I want to defer it because we're going to take somebody's deposition next week, next month, next year, or whatever. And they want to submit those proofs to intercompany arbitration. And that's a pretty big distinction because it's not dismissed. If you were to take the argument that defendants are making in this case, you have to ignore common sense and equity, as this court was pointing out. Common sense here. If intercompany arbitration was filed, why in the world would they allow, unknowingly and agree to allow, this other matter to go forward and give a third of the recovery to the attorneys? Common sense says they would not, but the intercompany arbitration and the insurance companies would not. How would the plaintiff know that you had an arbitration pending? Your plaintiff does not know because we didn't know of each other. That goes back to my original point. Is the plaintiff your insurance? The plaintiff is our insurance, yes. We didn't know of the lawsuit. The plaintiff attached an affidavit to that effect. We attached an affidavit to that effect. Farmers hasn't attached anything. But the unequivocal evidence in the record is that we did not know of each other. Now, I want to point out something, which he's claiming that we knew about it in February. This is also part of the record, and it's A-72A. Just give me a second here. So your position is that your insurer did not know about the lawsuit? No, I'm saying that our insurer did not know about intercompany arbitration, and my insurance company, my client, did not know that the insurer had filed a lawsuit. The only entity that knew of the existence of both claims was farmers. The record, and I'm still more clear here, this is a letter of February 17th of 2010. This is on A-73 in the supplement. That's part of the record. I just want to read you the first sentence. And it's a letter from your insurance company to the arbitration firm. And it says, Dear Sirs, if respondent, which means farmers, requests a known deferment for unknown reasons, and in practice we do not get a copy of the deferment request, applicant is unaware of a suit being filed. This is part of the record. This is February 17th, 2010. There's also an affidavit from Erie Insurance, which is part of the record, that our first notice of this lawsuit was this claim. It all happened at the same time. He is, in fact, correct. We got notice of this. Did you get the February 25th letter? No. Not according to the affidavit we have attached. We didn't know anything about this.  And that's not part of the record. I'm not sure what letter. I don't have the record sitting in front of me. But I do have an affidavit from Erie saying, you know, in the letter that's attached, and this is, you know, this letter goes out and says we don't know what the deferment reason is, and we didn't know about the lawsuit. The letter that he refers to is April 14th letter, that he says, oh, that puts them on, you know, asking farmers, that's crazy basically to leave, which seems to be what he's suggesting. A letter can't create a lien because there's no legal way to enforce it. A lien is by statute or by agreement. A unilateral letter to somebody doesn't create a lien. The only thing that that letter, and it's in the record, the only thing that letter does is put farmers on notice, here are our bills, we paid $10,000, the letter actually says please send us a check for $10,000, and make sure if you can negotiate with the plaintiff, you protect our $10,000, which they acknowledge. So they send a response, we'll protect your $10,000. Who's obligated to put the parties, put everybody on notice? Who's, I think you can only put people on notice that you're aware of. So when you say put everyone on notice, you can only put people, there's no way, a legal and factual impossibility for your insurance company to put plaintiff's counsel on notice. But you could put your client on, I keep saying client, excuse me, your insured on notice. I don't know. The record, the underlying record was never developed. Again, this is why, you go back to the jurisdiction issue. If these factual issues here, what I also would have had in the trial, the people could have engaged in discovery. I don't know, and the record is completely devoid of any letters that the early insurance company, my client, would have sent out to their insurance. It was never an issue in the underlying case. There's never any discovery issue, because this was sent to the emotion. So I can't answer your question as to whether, what did this do? Making your mail payments, your payments under your policy. They would have been done as soon as the first bill came in, and the last bill that came in was April of 2001. When did you first get notice that a claim was being made under the insurance policy to pay the claim's medical bill? The record, I don't know the answer to that. It was never raised in the underlying case. The only thing we know is the last date, and that's supported by way of affidavit and by the record the letters that were sent. The last date was in April of 2009, and that very same day or the day after is when the early insurance company put farmers on notice, here are all of our bills. We made our last payment. It's $10,000. Please pay. I want to point out something which they completely ignored, which I think is one of the critical issues in this case, the release itself. The release itself that they signed does not include our claim, and importantly, the release was entered three months after their voting to adjudicate our claim. So it was done afterwards, so they can't claim they didn't know about it in both parties. It was done in November. It was signed on November 9, 2010, but the release specifically doesn't include it, and I cited a case. This is the Illinois Supreme Court case, Home Insurance vs. Hertz Company, and it says that a settlement agreement, a tort-feasible settlement with an insurer does not bar an insurer's segregation claim unless the insurer's release specifically provides for such. We have just the opposite here. Not only does it specifically not provide for it, but it specifically says it's not barred. It said of all of the other claims out there to go forward, the only thing that this settlement deals with is our claim. And I want to address one other thing, which is a case that I think the court should consider, and it's very similar, and it's a case of Country Mutual vs. State Farm. It's a First District case out of 2003, and it's a case that I argued myself. It was my first notice that there was even intercompany arbitration agreements. Actually, it's an interesting case. In that case, Country Mutual had an arbitration agreement, the same type of it. It's actually the same arbitration agreement. Got an award, and State Farm tried to put liens on the award check. They put medical liens, attorney's liens, all of these things. They gave a check to State Farm with all of these different liens on there. We had to go to the court and say, that's not a clean check. You have to remove all those liens. And it went up to the appellate court, and the appellate court agreed with Country Mutual. And they made a finding in that case, which I think is applicable here. And I want to just read you what it is on page 4 of his opinion. Here, the subject matter of the arbitration was not the plaintiff's claim, which was Rapp, as an injured party, but rather Country Mutual's subrogation rights related to his previous expenditures for Rapp's housing insurance medical treatment. The arbitration proceeding was separate and distinct from any claim or cause of action that Rapp, the insured, may have filed against Zennian due to the accident. Separate and distinct cause of action. That is what we're dealing with here. And I proposed this in my brief, and your Honor had made a similar comment. What would have happened in this case if we changed the facts a little bit, and instead of an arbitration agreement, they weren't part of arbitration, and your insurance company filed a lawsuit in DuPage County for subrogation. And they're sitting there proceeding along, whatever they want to do, proceeding along. Then this party comes in and says, we want to settle the case. Is anyone going to suggest that Judge Spence sitting in DuPage County could tell Judge Jones in DuPage County, you have to dismiss this action because I have jurisdiction over it, and we're going to settle this case? No. It's a separate and distinct cause of action. And that separate and distinct cause of action satisfies the premises of tending, because the purpose of tending is to put people on notice. Farmers cannot seriously claim that they did not know that your insurance company was pursuing its own claim, independent claim, for $10,000. They couldn't, because you have an arbitration claim. They didn't move to dismiss it. They moved to defer it. And if it was going to be binding on them, and the resolution of that case was somehow going to affect the arbitration claim, then they would have moved to dismiss it. They would have said, hey, we have another suit filed here. One final point, the arbitration agreement itself, and Ketchell points out under the country mutual benefit case, here's the problem. That's a 2000 or 1996 case that's over 20 years old. The arbitration agreement, which is part of the record, has changed. There is no provision in the arbitration agreement, which is part of the record, that would require dismissal of the arbitration due to another lawsuit. If that was in that other case, which they made specific reference to, which is why they ruled the way they did, it's not in this arbitration agreement. Could you then just continue to pursue your arbitration dispute? Yes, that is all we're asking to do. That's not before us. I know, but what is before you is that somehow the order from Judge Spence touches upon that, because I assume they're going to take that and say, here's your check for $7,000, you're not going to get $10,000. We're going to dismiss the arbitration agreement to pursue it to Judge Spence's order. That hasn't happened yet, but I assume if his case were to affirm, that's what they're going to do. Do we have an opportunity to oppose that before a single arbitrator or a panel? We would have an opportunity to oppose it, but they're going to have a court order saying this is all that we're entitled to and that that claim is resolved. And that's going to create a problem. I go back again to the release. Our defense is, again, they didn't even touch upon it in their argument. The release very specifically does not include Erie's claim. Is your argument that the mere filing of your arbitration does away with any right to a common fund? Absolutely. Because it's an independent claim, and it's the same. Filing arbitration would be the same if we filed a lawsuit, if we weren't filing a company arbitration. Claimant's counsel can't come in and say, I mean, think of it. You've got to take a step back. Again, you ask them, why do you have a company arbitration? There's now data attached that explains it, which is the only evidence in the record. Again, it's common sense. To protect the money. They don't want to spend $3,300 on attorney's fees so they go to your company arbitration. If we were to take the logic that the defendant is suggesting here and say that claimant's counsel and defense can settle that case and we have another case, for example, out in DuPage County. If that were to resolve that case, what about the attorney that's prosecuting the case out in DuPage County? He gets a third of the recovery, too. Which means that in that case, Erie Insurance Company would walk away with $3,000. One attorney gets a third, he gets a third, Erie gets a third. That's the reason why you have intercompany arbitration. So that Erie and the other insurance companies can get together, basically cut out the attorneys, cut out all the expense, cut out the time, submit the proofs, and get their money. Or not get their money. They lose. That's the reason you have intercompany arbitration. And I go back to my final thing, which you already pointed out, equity. No one touched upon Farmers, the unclean hand that Farmers has here. Farmers is the only one who knew of all these parties. And yet they supposedly settled this case with a plaintiff for $40,000. Knowing full well that Erie had a $10,000 claim that was submitted, and all the proofs were submitted. The only thing we were waiting for was if there was an award coming back. Then they attached it. I assume they drafted the release, which is customary. The defendant would draft the release. The release specifically doesn't include Erie's claims. So I'm not really sure what their position is going to be, but it's going to create a problem if this court affirms that decision. And then we go back. I'm going to try to get that intercompany arbitration matter dismissed or disposed of pursuant to Joe Stetson's order. And what we're saying is give the plaintiff $40,000 and allow us our day in court. That's all we want. I assume you got your $7,000. I believe that money is held in the plaintiff's trust account or it hasn't been taken. Counsel, do you really think they're not going to pay you the $6,666? I'm not suggesting that I'm going to pay you that. I'm suggesting that we're entitled to our $10,000. We're entitled to go to court. And, again, if we go to arbitration free and clear and we don't prove our case, we get nothing. So there's an up and down side to that. We're not asking farmers to pay us anything. You should suggest to Judge Spence that plaintiffs simply give back the additional money to farmers and that you and farmers go forward with your arbitration. Was that ever raised to Judge Spence? It was raised in this sense. Would that be a yes or no? Yes, it was, but not in those words, but yes. It was raised because our position all along is that we want nothing to do with that. He can have the $40,000, he'll do whatever he wants with it, and give $10,000 back. It doesn't matter. Our position has always been you've got your case, we've got ours. They're separate and distinct under the law, and that's what we want to do. And your position is the only reason you didn't notify plaintiffs' attorneys is because you had no idea there was a lawsuit. We had no idea. Is that true? Yes. And so the dispute here is that he said, Dr. DeRosberg, Counselor, I believe it was you, that you, on behalf of farmers, said that the February 25th letter was, in fact, sent. And you're saying there is no February 25th 2010 letter. Is that correct? Not according to the record and the affidavit attached to Mary. So I can only add an affidavit. Obviously, I wasn't a part of the insurance company. They're claiming they didn't get anything. And the only thing when they got notice, again, when you look at the common fund doctrine and the requirements about taking a position and taking a firm position, they received notice of the adjudication of the lien six days later the order was entered. I received this file myself probably three days after that. And six months later. I'm talking about February of 2010. Yes. We didn't have, according to the affidavit, it's part of the record. And it's part of the, it's in the record. And it's also in the affidavit for age 60, the affidavit of Melinda Bones, who is the adjuster, primary adjuster there. And I've spoken to her many times on the phone. And again, it's in all of our briefs and everything. We had no notice of this. As soon as we got notice of it, we stepped in front of the court and said, we want no part of that. We have our own claim. We couldn't have been any clearer on that. Three months after that, three months after we stepped in front of the judge, in front of Judge Spencer and said, we want nothing to do with that, that's when they ultimately settled this case. And that's the date that the release was signed. So right after the fact that we told them, we want nothing to do with it, and that's the reason we can't. Three months later, approximately three months later, they execute the agreement. And in that agreement, obviously at that time. What date was the settlement? It is dated November 9th. It's A55 of the appendix. November 9th of 2010. And that's after the judge, that's after we stepped up and said, we want nothing to do with it. And again, the release, I don't know if the release would be any more clear. It says it doesn't, this release does not release Erie's claims. It doesn't mention Erie by name, but it says any other claims. And the case law that I cited, the Supreme Court case, requires them to specifically release Erie's claim in order for it to bind that segregation matter, which it does not do. So I submit to you once again, Farmer's Insurance Company, on behalf of the defendant, knew at the time that when they offered the $40,000, when they entered into this release, that it does not bind Erie Insurance and does not serve as an adjudication of that claim. Because that's what the release says. So for those reasons, I'd ask this court to reverse this matter at a bare minimum because you're asking, the court's asking questions about letters of testimony, documents. We never had the opportunity to present anything because we weren't a party. In fact, as I pointed out in my brief, I wasn't even permitted to file an appearance in this matter when I tried to, when we filed our brief. The circuit court, because I was not a party, did not allow me to file an appearance. I had to file a motion as a respondent to this motion. So we're technically still not a party, and neither is Farmers, which goes back to the jurisdictional issue. At a bare minimum, this court should reverse this matter to allow the record below to be created to answer some of these questions. But I think actually, based upon the record you have before it, and specifically the release, there's no basis to find that Erie Insurance Company is bound by this settlement. This is a country mutual case that you referred to. It doesn't specifically state that if arbitration is filed, then there is no remedy for a family fund. It doesn't specifically say that, but the facts are similar, and it does answer that question. Because what happened there is the arbitration was filed, you got an arbitration award paid down. Just so you know, normally when you file arbitration, you get a decision in like two or three months. You're done. You submit your proofs. So when we submitted and filed this arbitration back in 2009, three months later, we should have gotten more. They asked for a deferment because a claim was being made, and I assume because they wanted to get evidence, you know, a deposition testimony and such. But the country mutual case that I cite, the reason why the court ruled the way it did is because it found that there are two separate causes of action. What happened there is the state of Farmers saying, well, wait a minute, we have this attorney's lien. Actually, it's the same argument they're making there. We have this attorney's lien, volumetric lien. What are we going to do if we don't put their name on the check? And the court said, you know what, they have no right to have their name on the check. They don't have any right to those funds because country mutual's funds are independent. As soon as they made those claims, they belong to them. And that's exactly what we have here. It's a contractual claim. It's not a lien. It's a subrogation claim. And we have the exclusive rights to those funds because we paid them. And for them to suggest that they have a one-third right to recovery for attorney's fees for dragging us in here, we've been saying all along we don't want anything to do with that. It defies logic, it defies common sense, and it defies equity. And you're hanging your head on the fact that they were on notice of your position even though you didn't comply with the Tenney letter, et cetera, from October 5th to November 9th. I want to point out something. I'm not aware of any legal authority, and they have not cited any, that requires an insurance company to send a Tenney letter to its insured not knowing that there's a lawsuit. There's no case law that I'm aware of here. I don't think that's what counsel said. He said that you could send a letter to your insured saying don't settle anything without notifying us. Well, in essence, that's a Tenney letter. In fact, he actually made the argument that we have to send a Tenney letter to our insured, and there's no authority for that. What I'm saying is when we file our company arbitration, the same as if we filed a matter in another court, that serves the purpose of a Tenney letter because there can't be anything more unequivocal that me, insurance company, I'm going to protect my own right than filing a lawsuit. Because to hold otherwise would defeat the entire purpose. I mean, if you don't even – when you file a lawsuit, in many cases subordination claims are filed right after the lawsuit. Personal injury actions sometimes wait two years because you're getting medical treatment and so forth and so on. Well, in your policy, with respect to the plan, you agreed to pay a certain amount of medical payments that you received in the accident. Yes, $10,000 a month. And then there's another provision that says you have the right to recover what you paid from any money that you have claimed that you received from a third party relative to the accident. And there must be some common cause between your medical payment and your right to subordination. Our policy provides that we have a right to recover against a tort seizure, an independent action, which is what most insurance policies have, that provision in there. That gives them the right for subordination. Well, doesn't the policy also provide that your insurance recovers from a third party? You have the right to get the money from the insurer? It says that we may be entitled to – I believe, and again, it may say that we're entitled to some type of reimbursement. But I don't know. The policy isn't part of the record either. Again, because it wasn't at issue in this case. At issue in this case, when we were served with the motion, was we don't have a lien, and that's all we filed. We don't have a lien. We don't want anything to do with your money. And nothing else was filed in the court. So all these discovery issues, what the policy says, again, that's the reason it goes back to jurisdiction. It has to be filed. Look at all of the case law dealing with – and all the case law that they cite dealing with common fund doctrine. What's a common thread in all of those is that the common fund doctrine is litigated in a claim in which all of the parties – there's a lawsuit filed, if you will, a complaint, saying we're entitled to this amount of money. There's service of process. You get discovery. That's not what happened here. That's something that seems to be glossed over by that too. You can't just serve a motion by mail and try to adjudicate my rights. I mean, not only notice and things like that, but we have a right to participate in the discovery. We couldn't do any of that in this case because we weren't a party. As I said, we weren't even able to file an appearance in this case because we weren't a party. We were merely responding to a motion. And we immediately stepped up and told the judge and the parties, we're not subjecting ourselves to the jurisdiction of this court. We don't have a right to drag us in here and try to adjudicate this claim that we have pending 200 miles away. Judge Fentz doesn't have a right to interfere with that. And, again, because we weren't a party and neither was Farmers, but Judge Fentz's order directly relates to that intercompany arbitration because our position is we have another matter pending, and Judge Fentz says too bad. We're going to settle it, and we're entitled to $6,600 and plaintiffs entitled to $3,000 on your $10,000 claim. He adjudicated our $10,000 claim. There's no ifs, ands, or buts about that. And there's nothing that we can do about it other than to come to this court and say this is wrong and it needs to be corrected. We want our day in court. We want our day in arbitration, if you will. And by now the jury is out. As I pointed out, the jury has been out on that case since June of 2009. The only thing that we need is an order from the appellate court saying go ahead and go forward and then roll out a decision. Either we win or we lose. And plaintiff gets his $40,000. And they want to dispute whether it's 30 or 40. And that's between them. The Justice Department made that comment. What about the $10,000? I have nothing to do with that. Neither does my client, and my client doesn't care. We have our own claim. We live and die by that claim, arbitration. And as case law so clearly points out, arbitration is so favored in Illinois that it literally divests the court of jurisdiction when there's an arbitration clause. And in this case, there's an arbitration clause that mandates arbitration and also, as I pointed out, it mandates dismissal. I mean, the arbitration clause says when a matter that shouldn't have been filed in arbitration under this agreement is placed in litigation, the party filing the litigation must dismiss the action. It's mandatory. So Illinois insurance companies could not come in and participate in this action even if they wanted to because they're required to have an arbitration agreement that prohibits them from doing that. We have to arbitrate these claims, and we're asking the court to enforce this term. And as I pointed out, arbitration is so fundamental now that the Illinois legislature has mandated inter-company arbitration for every insurance company. You can't get much more stronger public policy than that. So for those reasons, again, we ask that this court reverse this matter and what I would like the order of the public court somehow to say is that we can go forward with our inter-company arbitration without interference with Judge Spence's order. Because an absolute subtype of language like that, we're going to have confusion both with the circuit court and with the arbitrator. We need a definitive answer. Can we go forward with arbitration or does Judge Spence somehow get jurisdiction over everybody and his order stands in areas stuck with $6,000 as opposed to $10,000? Thank you.